632

## THE SHANG HO.
### No. 13720.

District Court, W. D. Washington, N. D.
Feb. 19, 1936.

Wright, Jones & Bronson, of Seattle, Wash., and Chas. A. Turner, of Everett, Wash., for libelant.

Hayden, Merritt, Summers & Bucey, of Seattle, Wash., for claimant.

NETERER, District Judge (after stating the facts as above).

Both parties rely on The Admiral Peoples (Kenward v. The Admiral Peoples et al.), 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 as decisive of admiralty jurisdiction. In The Admiral Peoples, supra, the injured fell while disembarking on a gangplank leading from the vessel to the dock. The gangplank placed so as to slope from the ship to the dock at a 10 or 15-degree angle, the gangplank being 2 feet wide, 11 feet long and was about 6 inches above the level of the dock. A rope railing on each side which terminated about 3 feet from the dock end; that the injured, following instructions of the ship's officer, proceeded from the ship along the gangplank, and at the lower end, unaware that it was 6 inches above the dock, having no warning, fell from the gangplank and was injured.

The court held the conflict in the cases was in fixing the line between land and water jurisdiction. Some holding the water line in disembarking was at the end of the gangplank on the dock; embarking was at the end off the gangplank on the ship.

Certiorari was granted, "in view of an asserted conflict with other decisions of the Federal Courts." 294 U.S. 702, 55 S.Ct. 546, 79 L.Ed. 1238.[1]

The Supreme Court appears to have definitely fixed the line. In The Admiral Peoples, supra, it says (295 U.S. 649, at page 651, 55 S.Ct. 885, 886, 79 L.Ed. 1633) : "The basic fact in the instant case is that the gangplank was a part of the vessel. It was a part of the vessel's equipment which was placed in position to enable its passengers to reach the shore. It was no less a part of the vessel because in its extension to the dock it projected over the land." In the instant case the gangplank was placed to afford ingress and egress to and from the vessel by the libelant and others in load-

[1] Compare The Strabo (D.C.) 90 F. 110; Id. (C.C.A.) 98 F. 998; The H. S. Pickands (D.C.) 42 F. 239; The Aurora (D.C.) 163 F. 633; Id. (D.C.) 178 F. 587; Aurora Shipping Co. v. Boyce (C.C.A.) 191 F. 960; The Atna (D.C.) 297 F. 673; The Brand (D.C.) 29 F.(2d) 792.

ing and storing cargo. The gangplank at the time was under the immediate control and supervision of the ship's officers, was furnished by and is a necessary part of the vessel, as much as the engine used for operating the crane, hoist, or derrick in loading cargo, and the injury occurred while libelant was using the gangplank in loading the storing cargo pursuant to orders and directions of his superior officers in the discharge of his duty in such labor. I see no distinction in the instant libel and The Admiral Peoples. The gangplank being a part of the ship, in the instant case, for all purposes in issue, it is immaterial whether the libelant was facing the ship or facing the shore at the time of injury. If this conclusion is erroneous, the Supreme Court failed to do what it set out to do in granting review in that case. Admiralty has jurisdiction.

Exceptions are denied.

